UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

NOLA FINE ART, INC. AND                    CIVIL ACTION
MICHAEL HUNT

VERSUS                                     NO: 13-4904

DUCKS UNLIMITED, INC.                      SECTION: R(4)


**ORDER AND REASONS**

Before the Court is defendant, Ducks Unlimited, Inc.'s motions for summary judgment on plaintiffs' contract,[1] detrimental reliance,[2] unfair trade practices,[3] and fraud[4] claims. Also before the Court is Ducks Unlimited's motion to strike two of plaintiffs' summary judgment exhibits.[5] For the following reasons, the Court grants Ducks Unlimited's motions for summary judgment on plaintiffs' detrimental reliance, unfair trade practices, and fraud claims. The Court denies Ducks Unlimited's motion for summary judgment on plaintiffs' breach of contract claim. The Court also denies Ducks Unlimited's motion to strike plaintiffs' summary judgment exhibits.

---

[1] R. Doc. 37.

[2] R. Doc. 38.

[3] R. Doc. 39.

[4] R. Doc. 40.

[5] R. Doc. 50.

## I.   BACKGROUND

This suit arises from a failed charitable project intended to raise money for the restoration of Cat Island, a small island off the coast of Southeast Louisiana.   Plaquemines Parish Coastal Director P.J. Hahn spearheaded the project and met with plaintiff Michael Hunt in late May or early June of 2012 to discuss Hunt's interest in participating in the project.[6]   Hunt, the artist-owner of NOLA Fine Art, Inc., agreed to participate in the project. Specifically, Hunt agreed to paint, sell, and ship a "Cat Island Poster" and donate 20% of the proceeds to the restoration project.[7] Although the primary goal of the project was to raise funds to benefit Cat Island, Hunt anticipated that the project would also generate substantial profits.[8]

After securing plaintiffs' participation, Hahn approached Ducks Unlimited to gauge their interest in lending their name, logo, and reputation to the project.[9]   In early June, Hahn and Hunt met with Ducks Unlimited's State Chairman, Robert Garrity, Jr., to discuss Ducks Unlimited's participation in the project.   The

---

[6] R. Doc. 1 at 2.

[7] *Id.* at 3-4.

[8] *Id.* at 4-5 ("NOLA Fine Art anticipated that such a project would sell out quickly, be profitable, charitable, and earn favorable publicity for him by having generated the donated funds from the sale of his art.").

[9] R. Doc. 37-3 at 3.

parties dispute centers on the extent to which Garrity committed Ducks Unlimited to the project during this meeting. Ducks Unlimited concedes that Garrity authorized Hunt to use the Ducks Unlimited logo on select editions of the Cat Island Poster in exchange for a 20% licensing fee.[10] Ducks Unlimited contends that this is where the agreement ends.[11] Plaintiffs, on the other hand, argue that Garrity agreed to donate a portion of Ducks Unlimited's 20% licensing revenues to the Cat Island project and further agreed to send "email blasts" advertising the prints to Ducks Unlimited's 650,000 members nationwide.[12] The parties did not execute a written contract.

Over the next month and a half, Hunt finished the project and began to advertise the prints. Ducks Unlimited also advertised the prints in its August 2012 "Louisiana DU News" publication.[13] By mid-August, however, Hunt became concerned about Ducks Unlimited's

---

[10] R. Doc. 37-3 at 3.

[11] *Id.*

[12] R. Doc. 48-2 at 2 ("Ducks Unlimited's sole obligations under the parties' agreement was that it was to actively and regularly advertise the prints to its over 650,000 members and it was to turn over a portion of its percentage to the restoration of Cat Island.").

[13] R. Doc. 48-6. The Newsletter reads, in pertinent part: "The 'Cat Island Project' print was commissioned by DU President John Newman and DU State Chairman, Robert Garrity and was unveiled at the 2012 Louisiana DU State Convention in New Orleans, LA. These prints are now available for sale with a portion of the proceeds going towards the restoration of the Cat Islands, a nesting habitat of the Brown Pelican."

commitment to the project.   On August 20, 2012, Hunt met with Garrity and Hahn to address his concerns.   The conversation was recorded.[14]   Although the meeting focused on Ducks Unlimited's concerns regarding references to the BP Oil Spill in the promotional material, Garrity also confirmed that Ducks Unlimited's licensing fees would go to general "coastal restoration" rather than the Cat Island restoration project in particular.[15]   Garrity also stated that Ducks Unlimited would not send any national emails advertising the Cat Island poster.[16]

Unsatisfied with Ducks Unlimited's performance, Hunt withdrew from the project, refused to sell any additional prints, and brought this suit alleging breach of contract, detrimental reliance, unfair trade practices, and fraud under Louisiana law.[17] Ducks Unlimited now moves for summary judgment on all four of plaintiffs' claims.[18]   Ducks Unlimited also moves to strike two of plaintiffs' summary judgment exhibits.[19]

---

[14] R. Doc. 48-5.

[15] *Id.* at 16.   Garrity confirmed Ducks Unlimited's position in his deposition.   R. Doc. 48-8 at 5.

[16] R. Doc. 48-5 at 29 ("[W]e can do web blasts from the state.   We can't do 'em nationally.").

[17] R. Doc. 1.

[18] R. Docs. 37-40.

[19] R. Doc. 50.

## II.  LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine

5

dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.; Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

**III. DISCUSSION**

    a.   *Ducks Unlimited's Motion to Strike Plaintiffs' Summary Judgment Exhibits*

    Ducks Unlimited moves to strike two of plaintiffs' summary judgment exhibits.[20]  First, Ducks Unlimited moves to strike an email authored by P.J. Hahn arguing that it is inadmissible hearsay and that plaintiffs have not properly authenticated the email.[21]  Second, Ducks Unlimited moves to strike the transcript of a recorded conversation between Michael Hunt, Robert Garrity, and P.J. Hahn arguing that transcript was not certified in accordance with Federal Rule of Civil Procedure 30(f)(1).[22]  The Court finds Ducks Unlimited's arguments to be without merit.

    Ducks Unlimited first argues that the Hahn email is not competent summary judgment evidence because it is inadmissible hearsay.  Hahn's email, dated August 10, 2012, is addressed to Michael Patterson, Ducks Unlimited's 2012 Publicity Chairman.[23]  Hahn states, *inter alia*, that "our agreement was to promote the project through the media to jump start the interest, and then get email blasts to DU members (All members) to produce sales."[24]  Ducks

---

[20] R. Doc. 50.

[21] R. Docs. 47-3, 48-3, and 49-3.

[22] R. Docs. 47-5, 48-5, and 49-5.

[23] R. Doc. 47-3 at 3.  Michael Hunt and Robert Garrity were also copied on the email.

[24] *Id.*

7

Unlimited contends that plaintiffs offer the email to prove the terms of the alleged contract, and that the email is therefore inadmissible hearsay.[25] Although not admissible to prove the truth of the contents, the Court finds the Hahn email admissible for the non-hearsay purpose of demonstrating that Ducks Unlimited was aware of plaintiffs' interpretation of the alleged contract. *See Imperial Trading Co., Inc. v. Travelers Property Cas. Co. of Am.*, CIV. A. No. 06-4262, 2009 WL 2382787, at *1 (E.D. La. July 31, 2009) (email admissible for "the non-hearsay purpose of demonstrating that defendant was informed of the information contained in the email"). The Court also overrules Ducks Unlimited's objection to the Hahn email on authenticity grounds. As an initial matter, Michael Hunt, a recipient of the email, provided an affidavit authenticating the email.[26] *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000) ("[E]vidence may be authenticated by testimony of a witness with knowledge that a matter is what it is claimed to be."). Moreover, Ducks Unlimited produced the email to plaintiffs in discovery and therefore cannot seriously dispute the email's authenticity. *See John Paul Mitchell Sys. v. Quality King Distribution, Inc.*, 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000) (a defendant's act of producing documents in response to a request for production implicitly authenticates the

---

[25] R. Doc. 50-2 at 2.

[26] R. Doc. 48-2 at 4.

documents produced).

The Court likewise overrules Ducks Unlimited's objection to the transcript of the recorded conversation between Hunt, Hahn, and Garrity.[27] Ducks Unlimited does not dispute the accuracy of the transcript, but instead argues that plaintiffs failed to authenticate the transcript and failed to have the transcript certified in accordance with Federal Rule of Civil Procedure 30(f)(1).[28] As an initial matter, Rule 30(f)(1), by its express terms, applies only to "depositions by oral examination," and Ducks Unlimited has not provided the Court with any authority for applying the rule's certification requirement outside the deposition context. Fed. R. Civ. P. 30. Absent such authority, the Court declines Ducks Unlimited's invitation to expand the certification requirement beyond the scope contemplated by the rule. The Court likewise overrules Ducks Unlimited's objection regarding plaintiffs' alleged failure to authenticate the transcript. Like the Hahn email, Ducks Unlimited produced the transcript in discovery and Michael Hunt, a party to the recorded conversation, provided an affidavit authenticating the transcript.[29] Thus, the Court overrules Ducks Unlimited's failure to authenticate objection on the same grounds. *See Love*, 230 F.3d at 776; *John*

---

[27] R. Docs. 47-5, 48-5, and 49-5.

[28] R. Doc. 50-2 at 3.

[29] R. Doc. 48-2 at 4.

*Paul Mitchell Sys.,* 106 F. Supp. 2d at 472.

    b.   *Ducks Unlimited's Summary Judgment Motions*

        i.   *Plaintiffs' Contract Claim*

Ducks Unlimited moves for summary judgment on plaintiffs' breach of contract claim arguing (1) that plaintiffs failed to proffer sufficient evidence to create a question of fact as to whether the parties formed a contract, (2) that Louisiana law requires the contract to be in writing because the alleged contract is a stipulation *pour autrui*, and (3) that Hurricane Isaac's landfall was a resolutory condition that terminated Ducks Unlimited's obligations under the alleged contract. The Court will address Ducks Unlimited's arguments in turn.

Ducks Unlimited first argues that plaintiffs failed to proffer sufficient evidence to create a question of fact as to whether the parties formed a contract. "A party who demands performance of an obligation must prove the existence of the obligation." La. Civ. Code art. 1831. A contract is formed by the consent of the parties established through offer and acceptance, and "[u]nless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." La Civ. Code art. 1927. However, an oral contract valued at more than $500 "must be proved by at least one credible witness and other corroborating circumstances." La. Civ. Code art. 1846. Although

"[t]he plaintiff himself may serve as the witness to establish the existence of the oral contract," the "corroborating circumstances" must come from a source other than the plaintiff.  *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 58 (La. 2005). The corroborating circumstances need only be general in nature; "independent proof of every detail of the agreement is not required." *Id.* (citing *Kilpatrick v. Kilpatrick*, 660 So. 2d 182, 185 (La. App. 2d Cir. 1995)).

Here, plaintiffs have proffered sufficient evidence to create a question of fact as to whether the parties entered into a contract.  Michael Hunt provided an affidavit which states that Robert Garrity contracted on Ducks Unlimited's behalf and agreed to donate a portion of Ducks Unlimited's licensing fee proceeds to the Cat Island restoration project and further agreed to send email advertisements to its 650,000 members nationwide.[30]  Hunt is a "credible witness" under Article 1846. *Suire*, 907 So.2d at 58. Plaintiffs have also provided evidence that qualifies as "corroborating circumstances" under Article 1846.  For example, Ducks Unlimited's August 2012 "Louisiana DU News" publication tends to support plaintiffs' characterization of the parties' oral contract.[31]  The Newsletter provides in pertinent part:

The "Cat Island Project" print was commissioned by DU

---

[30] R. Doc. 49-2 at 2.

[31] R. Doc. 48-6 at 8.

11

> President John Newman and DU State Chairman, Robert
> Garrity and was unveiled at the 2012 Louisiana DU State
> Convention in New Orleans, LA.  These prints are now
> available for sale with a portion of the proceeds going
> towards the restoration of the Cat Islands, a nesting
> habitat of the Brown Pelican.[32]

Not only does Ducks Unlimited's own publication support the existence of a contract between the parties, but it also supports plaintiffs' contention that Ducks Unlimited agreed to donate a portion of its licensing fees to the Cat Island restoration project.  This is sufficient under Article 1846.  *See Harang v. Schwartz*, CIV. A. No. 13-58, 2014 WL 4084939, at *8 (E.D. La. Aug. 15, 2014) (denying judgment as a matter of law because "corroborating circumstances need only be general in nature"); *Robert Hale, III v. M.J.J.K. LLC*, CIV. A. No. 12-1515, 2013 WL 6835987, at *3 (E.D. La. Dec. 23, 2013) (denying summary judgment because "[w]hether a plaintiff has offered sufficient corroborating evidence is a question of fact").  Accordingly, the Court finds that plaintiffs have proffered sufficient evidence to create a question of fact as to the existence and terms of a contract between the parties.

Ducks Unlimited next argues that, if there was a contract between the parties, it was for the benefit of Cat Island, and Louisiana law requires third party beneficiary contracts, known as stipulations *pour autrui*, to be in writing.  Contrary to Ducks

---

[32] *Id.*

12

Unlimited's assertion, Louisiana law does not require third party beneficiary contracts to be in writing. *Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary*, 939 So. 2d 1206, 1215 (La. 2006) ("Review of the former articles, as well as the current articles related to a third party beneficiary contract, indicates that there is no statutory requirement that the stipulation *pour autrui* be in writing."). Thus, even if the Court were to assume that the parties agreement constitutes a stipulation *pour autrui*, the Louisiana Supreme Court has expressly held that there is "no general requirement that stipulations *pour autrui* be in writing." *Id.* at 1215 n.13. Accordingly, the Court finds Ducks Unlimited's second argument to be without merit.

Ducks Unlimited's final argument is that Hurricane Isaac's landfall on August 28, 2012 fulfilled an implied resolutory condition thereby terminating Ducks Unlimited's obligations under the contract.[33] In other words, Ducks Unlimited argues that the viability of the project was an implied condition of its obligations under the alleged contract. Ducks Unlimited further contends that Hurricane Isaac rendered the Cat Island project infeasible and thereby terminated Ducks Unlimited's obligations. To support this theory Ducks Unlimited provides the affidavit of P.J. Hahn which states that although Hahn "was initially hopeful that the Cat Island restoration plan . . . would remain viable

---

[33] R. Doc. 37-3 at 12.

after Hurricane Isaac," Hahn later recognized that Hurricane Isaac rendered Cat Island unsalvageable.[34]

Although a proponent of a contract has the burden to prove the contract's existence, "[a] party who asserts that an obligation is null, or that it has been modified or extinguished, must prove the facts or acts giving rise to the nullity, modification, or extinction" by a preponderance of the evidence. La. Civ. Code art. 1831. *See also Bell v. Badger, Inc.*, 420 So. 2d 1197, 1198-99 (La. App. 5th Cir. 1982) ("A litigant who pleads extinction of an obligation bears the burden of proving that defense by a preponderance of the evidence."). The Court finds that Ducks Unlimited has failed to carry this burden. Indeed, the only evidence Ducks Unlimited provides to support its position is the affidavit of P.J. Hahn.[35] Although Hahn concludes that Hurricane Isaac ultimately rendered the Cat Island restoration project "unfeasible," neither Hahn nor Ducks Unlimited provides any factual support for this position. Hurricane Isaac's effect on Cat Island is a factual determination that the Court is not prepared to make on such scant evidence. *Cf. Citadel Builders, LLC v. Transcontinental Realty Inv., Inc.*, CIV. A. No. 06-7719, 2007 WL 1805666, at *4 (E.D. La. June 22, 2007) ("The Court will not rule as a matter of law that Katrina and her aftermath are not

---

[34] R. Doc. 37-4 at 2.

[35] R. Doc. 37-4.

14

fortuitous events under Louisiana law.").

The Court also finds that there is a question of fact as to whether Ducks Unlimited breached the alleged contract before Hurricane Isaac's landfall.  Hunt met with Garrity and Hahn on August 20, 2012, eight days before Hurricane Isaac made landfall.[36] At this meeting, Garrity informed Hunt that Ducks Unlimited would not earmark any of its 20% licensing revenues for the Cat Island restoration project but would instead use the money for "coastal restoration" in general.[37]  Garrity also informed Hunt that Ducks Unlimited would not send out emails to their national membership.[38] Thus, even assuming that Hurricane Isaac's landfall fulfilled the alleged resolutory condition, the Court finds that there is a question of fact as to whether Ducks Unlimited breached the alleged agreement before the hurricane struck.  *See Schaumburg v. State Farm Mut. Auto. Ins. Co.*, 421 F. App'x 434, 438 n.4 (5th Cir. 2011) ("Louisiana recognizes the concept of anticipatory breach.")

For all the foregoing reasons, the Court denies Ducks Unlimited's motion for summary judgment on plaintiffs' breach of contract claim.

    ii.  *Plaintiffs' Detrimental Reliance Claim*

Ducks Unlimited next moves for summary judgment on plaintiffs'

---

[36] R. Doc. 49-5.

[37] *Id.* at 16.

[38] *Id.* at 29.

detrimental reliance claim.  Ducks Unlimited argues that plaintiffs failed to provide evidence demonstrating that plaintiffs relied on Ducks Unlimited's alleged promises to their detriment.[39]

Louisiana Civil Code article 1967 governs plaintiffs' detrimental reliance claim.  That article provides, in pertinent part:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.  Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise.  Reliance on a gratuitous promise made without required formalities is not reasonable.[40]

Accordingly, to succeed on a detrimental reliance claim, a plaintiff must prove: (1) that defendant made a representation; (2) that plaintiff justifiably relied on the representation; and (3) that plaintiff changed its position to its detriment based on that reliance.  *See Gangi Seafood Inc. v. ADT Sec. Services, Inc.*, 353 F. Supp. 2d 710, 715 (E.D. La. 2004).

Although plaintiffs have provided evidence that Garrity made the alleged promises, the Court finds that plaintiffs have failed to provide any evidence demonstrating a change in their position based on their reliance on Ducks Unlimited's alleged promises.  Indeed, plaintiffs spend the majority of their opposition quoting

---

[39] R. Doc. 38-3 at 4.

[40] La. Civ. Code art. 1967.

from allegations in the complaint:

> Plaintiffs allege in their Complaint that Ducks Unlimited commissioned the prints and that in return Ducks Unlimited obligated itself to donate its 20% interest in the proceeds directly to the Cat Island project for the restoration of Cat Island. The Complaint further states as a result of Nola Fine Arts Commitments that: "In return, DU would market and promote the prints to their 650,000 members nationally" and take other steps to promote the sale of the prints and the goals of the project. The Complaint further states that Hunt would have to postpone other projects to focus his efforts and the efforts on the prints and that marketing would have to be swift and massive. "Nola Fine Arts set aside two pending projects and focused on the Cat Island project exclusively.[41]

It is well-settled, however, that to survive summary judgment a plaintiff must do more than rest on allegations contained in the complaint. *Celotex*, 477 U.S. at 325; *see also Weyant v. Acceptance Ins. Co.*, 917 F.2d 209, 212 (5th Cir. 1990) (to survive summary judgment, "the party opposing the motion may not sit on its hands, complacently relying upon the pleadings").

Notwithstanding this failure, plaintiffs do make the general assertion that the "record reflects a genuine issue of material fact as to the nature of the promises, the reliance upon them, and the detriment caused to the plaintiff," and cite every exhibit they attach to the pleading in support.[42] Although the Court is under no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment," *Ragas v. Tenn.*

---

[41] R. Doc. 49 at 3.

[42] *Id.* at 3-4.

*Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998), the Court has reviewed plaintiffs' exhibits and finds no factual support for their contention.  Indeed, the only time reliance is even mentioned in any of the exhibits is in the affidavit of Michael Hunt.  Hunt provides that "Ducks Unlimited was aware that I would have to forego other opportunities in order to participate in this project" and that he "relied on these promises from DU."[43]

As an initial matter, "affidavits setting forth ultimate or conclusory facts . . . are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotations omitted); *see also Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002).  Thus, Hunt's assertion that he "relied on these promises from DU" is insufficient to defeat Ducks Unlimited's motion for summary judgment.  Moreover, Hunt's assertion that he had to forego other work to participate in the project does not demonstrate that he changed his position in reliance on Ducks Unlimited's alleged promises.  Plaintiffs readily admit that they committed to the project before Ducks Unlimited became involved,[44] and plaintiffs have provided no evidence or testimony demonstrating

---

[43] R. Doc. 49-2 at 2.

[44] R. Doc. 1 at 6 ("Prior to DU's involvement, NOLA Fine Arts' original plan was to produce 1000 prints . . . and market these Celebrity Edition prints to his collectors and general public without the DU logo for $250 each, generating a profit for NOLA Fine Art.").

18

a change in position after Ducks Unlimited made the alleged promises. To survive summary judgment, plaintiffs are required to offer competent evidence demonstrating that they suffered damages as a result of their reliance on Ducks Unlimited's alleged promises. *See Jackson v. Lare*, 779 So. 2d 808, 813 (La. App. 2d Cir. 2000) ("If the plaintiff suffered no damage in reliance on a promise, there was no detrimental reliance."). As plaintiffs have not provided the Court with any such evidence, Ducks Unlimited is entitled to summary judgment. *See, e.g., City of Bossier City v. Camp Dresser & McKee Inc.*, CIV. A. No. 11-0472, 2014 WL 4660791, at *4 (W.D. La. Sept. 16, 2014) (granting summary judgment where plaintiff failed to provide evidence demonstrating "a change in position to one's detriment because of the reliance").

For the foregoing reasons, Ducks Unlimited's motion for summary judgment on plaintiffs' detrimental reliance claim is granted.

### iii. *Plaintiffs' Unfair Trade Practices Claim*

Plaintiffs also allege that Ducks Unlimited's conduct violated the Louisiana Unfair Trade Practices Act ("LUPTA"). *See* La. Rev. Stat. § 51:1405 ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."). Ducks Unlimited moves for summary judgment on the LUPTA claim arguing that plaintiffs lack standing to bring a LUPTA claim and that plaintiffs have failed to prove

19

that Ducks Unlimited engaged in conduct proscribed by the act.[45]
The Court will address these arguments in turn.

Ducks Unlimited first argues that LUPTA claims are limited to
individual consumers or business competitors, and that plaintiffs
do not fit into either category. Although the Fifth Circuit
previously limited LUPTA's private right of action to individual
consumers or business competitors, *Orthopedic & Sports Injury
Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 226 (5th Cir. 1991), the
Louisiana Supreme Court has since clarified that LUPTA includes no
such limitation. *Cheramie Servs., Inc. v. Shell Deepwater Prod.,
Inc.*, 35 So. 3d 1053, 1057 (La. 2010) ("LUPTA grants a right of
action to any person, natural or juridical, who suffers an
ascertainable loss . . . . Although business consumers and
competitors are included in the group afforded this private right
of action, they are not its exclusive members."). *See also Burgers
v. Bickford*, CIV. A. No. 12-2009, 2014 WL 4186757, at *3 (E.D. La.
Aug. 22, 2014) (applying the *Cheramie Servs.* standard rather than
"older Fifth Circuit law on the issue"). Because plaintiffs allege
that they have suffered an ascertainable loss as a result of Ducks
Unlimited's "unfair or deceptive acts," the Court finds that
plaintiffs have standing to bring a LUPTA claim.

Ducks Unlimited next argues that even if plaintiffs have
standing to bring a LUPTA claim, they have nevertheless failed to

---

[45] R. Doc. 40-3.

20

demonstrate that Ducks Unlimited engaged in conduct proscribed by the act.  The Court agrees.

To succeed on a LUPTA claim, a plaintiff must show that the defendant engaged in conduct that "offends established public policy and  . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Cheramie Servs.*, 35 So. 3d at 1059 (internal quotations omitted).  What constitutes an unfair trade violation is determined on a case-by-case basis.  *Id*.  "The range of prohibited practices under LUPTA is extremely narrow," however, and there is "a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes." *Cargill, Inc. v. Degesch Am., Inc.*, 875 F. Supp. 2d 667, 676-77 (E.D. La. 2012) (citing *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993)).  LUPTA does not provide an alternate remedy for a breach of contract claim.  *Turner*, 989 F.2d at 1422 (internal citations omitted).  Indeed, "only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUPTA," *Cheramie Servs.*, 35 So. 3d at 1060, and this "egregiousness" often involves "the breach of a special relationship of trust." *Cargill*, 875 F. Supp. 2d at 677.

Plaintiffs contend that *Turner* is inapposite because Ducks Unlimited engaged in "unethical, unscrupulous, and substantially injurious behavior in addition to breaching the contract."[46]  In

---

[46] R. Doc. 47 at 12.

21

support of this position, plaintiffs argue that: (1) Ducks Unlimited deceived plaintiffs and the public when Ducks Unlimited promised they would donate a portion of their licensing fees to the Cat Island restoration project, but later reneged on this promise; (2) Ducks Unlimited deceived plaintiffs when Ducks Unlimited promised they would advertise the prints to their national membership, but failed to do so; and (3) Ducks Unlimited was motivated to breach the contract by an improper desire to appease BP.[47]   This argument is merely a recitation of plaintiffs' breach of contract claim.[48]   It is no different than asserting that plaintiffs expected Ducks Unlimited to perform under the contract, and it did not.   Plaintiffs cannot manufacture a LUPTA violation by simply adding the words "deceit" and "misrepresentation" to their contract claim.  *See Shaw Indus. v. Brett*, 884 F. Supp. 1054, 1058 (M.D. La. 1995) (finding that "the relationship between the parties and the nature of the disagreement . . . [was] more analogous to a breach of contract dispute than one involving unfair or deceptive acts," despite plaintiff's allegation of defendant's "deceitful, coercive, manipulative, and intentional misrepresentations").   Plaintiffs' allegation that Ducks Unlimited was motivated to breach

_____

[47] *Id.* at 12-17.

[48] R. Doc. 47-2 ("Ducks Unlimited's sole obligations under the parties' agreement was that it was to actively and regularly advertise the prints to its over 650,000 members and it was to turn over a portion of its percentage to the restoration of Cat Island.").

the alleged contract by concerns that they would lose funding from
BP does not alter this analysis.  *See Rogers v. Brooks*, 122 F.
App'x 729, 733 (5th Cir. 2004) (no LUPTA violation where defendant
breached contract to take advantage of better offer).   Thus,
because the Court finds plaintiffs' allegations "more similar to a
breach of contract claim than to a claim for the egregious behavior
covered under LUPTA," *Target Const., Inc. v. Baker Pile Driving &
Site Work, L.L.C.*, CIV. A. No. 12-1820, 2012 WL 5878855, at *4
(E.D. La. Nov. 20, 2012), Ducks Unlimited's summary judgment motion
on plaintiffs' LUPTA claim is granted.

     iv. *Plaintiffs' Fraud Claim*

Ducks Unlimited also moves for summary judgment on plaintiffs'
fraud claim.[49]  Louisiana law defines fraud as "a misrepresentation
or a suppression of the truth made with the intention either to
obtain an unjust advantage for one party or to cause a loss or
inconvenience to the other."  La. Civ. Code art. 1953.  To prevail
on a fraud claim against a party to a contract a plaintiff must
prove: (1) a misrepresentation, or omission of true information;
(2) the intent to obtain an unjust advantage or to cause damage or
inconvenience to another; and (3) the error induced by a fraudulent
act must relate to a circumstance substantially influencing the
victim's consent to the contract.  *Shelton v. Standard/700
Associates*, 798 So. 2d 60, 64 (La. 2001).  Although fraud cannot be

––––––––––––––––––––

[49] R. Doc. 39-3.

predicated on unfulfilled promises or statements as to future events, *Dutton & Vaughn, Inc. v. Spurney*, 600 So. 2d 693, 698 (La. App. 4th Cir. 1992), a fraud claim may be predicated on a promise made with the intention not to perform at the time the promise is made. *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 575 F.3d 483, 489 (5th Cir. 2009).

Ducks Unlimited first contends that plaintiffs have failed to identify a specific misrepresentation by Ducks Unlimited, arguing that an "affidavit from someone other than Hunt" is required to prove that Ducks Unlimited made the alleged promises.[50]   As discussed above, Hunt's affidavit states that Garrity promised that Ducks Unlimited would donate a portion of its licensing fee proceeds to the Cat Island restoration project and further promised that Ducks Unlimited would advertise the prints to its national membership.[51]  Although the affidavit is arguably self-serving, Rule 56 precludes the Court from discrediting Hunt's affidavit on summary judgment. *See C.R. Pittman Const. Co., Inc. v. Nat. Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) ("[A]n affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving."). Accordingly, the Court finds that there is a question of fact as to whether Garrity made the alleged

---

[50] R. Doc. 54 at 10.

[51] R. Doc. 47-2 at 2.

promises.

Although the Court finds that plaintiffs have provided sufficient evidence to create a question of fact as to whether Garrity made the alleged promises, plaintiffs have failed to provide sufficient evidence of Ducks Unlimited's intent to defraud. As stated above, a fraud claim under Louisiana law requires proof of a defendant's "intent to obtain an unjust advantage or to cause damage or inconvenience to another." *Shelton*, 798 So. 2d at 64. Additionally, in order to differentiate their claim from a simple breach of contract, plaintiffs must provide evidence tending to show that Ducks Unlimited made the alleged promises with the intent not to perform at the time the promises were made. *Keenan*, 575 F.3d at 490 ("A breach of promise, standing alone, is not enough for a fraud claim.").

The undisputed evidence here shows that Ducks Unlimited had a 20% interest in the project,[52] and plaintiffs have not provided any evidence that Ducks Unlimited committed to the project with the intent to cause damage to plaintiffs at Ducks Unlimited's own expense. Moreover, while plaintiffs repeatedly claim that Ducks Unlimited had no intention of fulfilling the alleged promises, plaintiffs have not provided the Court with any evidence tending to show that Garrity had a contemporaneous intent to breach the agreement at the time the parties allegedly formed the contract.

---

[52] R. Doc. 37-3 at 3.

That Garrity and other Ducks Unlimited representatives now deny the existence of the contract in this litigation does not tend to show Garrity's intent not to perform when he allegedly made the promises in 2012. Indeed, the only evidence of intent plaintiffs provide is evidence that Ducks Unlimited formed the intent to breach the alleged contract upon learning of BP's concerns regarding references to the "BP Oil Spill" in the parties' promotional material.[53] Critically, plaintiffs' own argument concedes that Ducks Unlimited did not form this intent to breach until after the parties entered into the alleged contract and began circulating promotional materials. Evidence that after allegedly entering into the contract, Ducks Unlimited decided to breach it out of a desire to appease BP does not demonstrate that Ducks Unlimited made the alleged promises with the intent not to perform. *Keenan*, 575 F.3d at 489 ("Fraud cannot be imputed, and simple broken promises alone are not sufficient.") (internal quotation omitted). Thus, absent evidence of a contemporaneous intent not to perform, Ducks Unlimited's failure to fulfill the alleged promises is "merely a breach of contract which must be enforced by an action on the contract." *Hanover Modular Homes of N. La., Inc. v. Scottish Inns*

---

[53] *See, e.g.*, R. Doc. 47 at 18 ("Ducks Unlimited advertised and induced others to participate in the project as a response to the BP disaster, yet it quickly backpedaled and killed the deal through its failure to advertise when BP's concerns were brought to its attention."); *id.* at 5 ("Faced with the choice of continuing with the project as agreed to, or reneging and accommodating BP, [Ducks Unlimited] sided with BP.").

*of Am.*, 443 F. Supp. 888, 892 (W.D. La. 1978).

For the foregoing reasons, the Court grants Ducks Unlimited's motion for summary judgment on plaintiffs' fraud claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Ducks Unlimited's motions for summary judgment on plaintiffs' detrimental reliance,[54] unfair trade practices,[55] and fraud[56] claims.  The Court DENIES Ducks Unlimited's motion for summary judgment on plaintiffs' breach of contract claim.[57]  The Court also denies Ducks Unlimited's motion to strike plaintiffs' summary judgment exhibits.[58]


New Orleans, Louisiana, this <u>12th</u> day of February, 2015.

<u>                    *Sarah Vance*                    </u>

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

---

[54] R. Doc. 38.

[55] R. Doc. 40.

[56] R. Doc. 39.

[57] R. Doc. 37.

[58] R. Doc. 50.